Nos. 12-56347, 12-56296

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

XL SPECIALTY INSURANCE COMPANY, *et al.*
Plaintiffs-Appellees,

v.

MICHAEL W. PERRY, *et al.*
Defendant-Appellants,
_____

On Appeal from the United States District Court
for the Central District of California (Judge R. Gary Klausner),
Case No. 2:11-cv-02078-RGK-JCG

## BRIEF OF APPELLANTS SCOTT VAN DELLEN, RICHARD KOON AND KENNETH SHELLEM

John L. Carlton
(State Bar No. 088925)
MEDRANO & CARLTON
555 West Fifth Street, 31st Floor
Los Angeles, CA 90013
Telephone: (213) 996-8355
Facsimile: (213) 996-8356
Email: jcarlton@medranocarlton.com

Robert S. Span (State Bar No. 68605)
STEINBRECHER & SPAN LLP
445 S. Figueroa St., Suite 2230
Los Angeles, CA 90071
Telephone: (213) 891-1400
Facsimile: (213) 891-1470
Email: rspan@steinbrecherspan.com
Attorneys for RICHARD KOON and
KENNETH SHELLEM

Damian J. Martinez (State Bar No. 200159)
Amir Kaltgrad (State Bar No. 252399)
CORBIN, ATHEY & MARTINEZ, LLP
601 West Fifth Street, Suite 1150
Los Angeles, California 90071-2024
Telephone: (213) 612-0001
Fax: (213) 612-0061
Email: dmartinez@corbinathey.com
        akaltgrad@corbinathey.com
Attorneys for SCOTT VAN DELLEN

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................iii

INTRODUCTION ....................................................................................... 1

ISSUES PRESENTED.................................................................................. 4

STANDARD OF REVIEW ........................................................................... 5

STATEMENT OF THE CASE....................................................................... 6

    A.  Nature of the Case, Course of Proceedings and Disposition Below.......... 6

    B.  Jurisdiction and Timeliness................................................................ 7

    C.  Statement of Facts ............................................................................ 7

        1.  The HBD Action............................................................................ 7

            a)  The Business Of HBD – The Bank's Homebuilder Division ............. 7

            b)  Allegations in the HBD Action .......................................... 9

        2.  The Tripp Action ....................................................................... 11

        3.  Bancorp's Insurance Program ..................................................... 14

        4.  The District Court's Decision...................................................... 16

SUMMARY OF ARGUMENT ..................................................................... 18

ARGUMENT ............................................................................................ 20

    A.  The District Court Erred in Broadly Interpreting the Exclusions to Deny All Coverage................................................................... 20

        1.  California law requires exclusions to be interpreted narrowly, favoring coverage, unless the insurer's interpretation is the only reasonable interpretation. ...................................................... 20

i

## TABLE OF CONTENTS
(continued)

Page

2. California law requires consideration of the parties' expectations and the context of the policy. .......................................................21

3. Undisputed evidence below demonstrated an ambiguity that required a narrow interpretation. ........................................................25

   a) Testimony of the insurers' representatives precluded a finding that only one reasonable interpretation existed. ......................................25

   b) The substantially increased premiums demonstrated that the insureds' expectations of narrowly applied exclusions were reasonable. ........................................................27

4. The District Court's conclusion – that "any" common fact triggers the exclusions – is at odds with Ninth Circuit and California precedent. ........................................................28

B. The District Court Erred By Concluding that the HBD Action Was Related to the Tripp Action. .......................................................33

   1. The alleged wrongful acts were different. ............................................33

   2. The actors and business entities were different. ...................................33

   3. The alleged victims and injuries were different. ...................................33

C. The District Court Erred in Denying the HBD Insureds' Motions for Summary Judgment. ........................................................34

CONCLUSION .........................................................35

CERTIFICATION OF COMPLIANCE ...................................................39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ablang v. Reno,*
  52 F.3d 801 (9th Cir.1995) ................................................................5

*Bank of the West v. Sup. Ct.,*
  2 Cal. 4th 1254 (1992) ...............................................................23, 5

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,*
  5 Cal. 4th 854 (1993) ......................................................................22

*Bodell v. Walbrook Ins. Co.,*
  119 F.3d 1411 (9th Cir 1997) .............................................20, 21, 26

*Church Mut. Ins. Co. v. U.S. Liability Ins. Co.,*
  347 F. Supp. 2d 880 (S.D. Cal. 2004)......................................24, 32

*Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.,*
  186 Cal. App. 4th 556 (2010) ........................................................27

*Cooper Cos. v. Transcon. Ins. Co.,*
  31 Cal. App. 4th 1094 (1995) ........................................................28

*Crane v. State Farm Fire & Cas. Co.,*
  5 Cal. 3d 112 (1971) .......................................................................26

*Desai v. Farmers Ins. Exch.,*
  47 Cal. App. 4th 1110 (1996) ........................................................27

*Eureka Fed. Sav. & Loan v. Am. Cas. Co.,*
  873 F.2d 229 (9th Cir. 1989) ..........................................3, 29, 30, 31

*Fed. Ins. Co. v. Raytheon Co.,*
  426 F.3d 491 (1st Cir. 2005)...........................................................32

*Feldman v. Illinois Union Ins. Co.,*
  198 Cal. App. 4th 1495 (2011) .......................................................23

iii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty Lines Ins. Co.*,
  506 F.3d 922 (9th Cir. 2007) ........................................................29, 31

*First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust*,
  631 F.3d 1058 (9th Cir. 2011) ...............................................................22

*Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*,
  120 Cal. App 4th 17 (2004) ...................................................................23

*HS Servs., Inc. v. Nationwide Mutual Ins. Co.*,
  109 F.3d 642 (9th Cir. 1997) .................................................................24

*MacKinnon v. Truck Ins. Exch.*,
  31 Cal. 4th 635 (2003) .........................................................21, 26, 27

*Markel Am. Ins. Co. v. G.L. Anderson Ins. Servs., Inc.*,
  715 F. Supp. 2d 1068 (E.D. Cal. 2010) .....................................20, 27

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006) .................................................................22

*Morey v. Vannucci*,
  64 Cal. App. 4th 904 (1998) .................................................................22

*Nevada Dep't of Corrections v. Greene*,
  648 F.3d 1014 (9th Cir. 2011) .................................................................5

*North River Ins. Co. v. Huff*,
  628 F. Supp. 1129 (D. Kan. 1985).........................................................31

*Okada v. MGIC Indem. Corp.*,
  823 F.2d 276 (9th Cir. 1986) .................................................................30

*Oswalt v. Resolute Indus., Inc.*,
  642 F.3d 856 (9th Cir. 2011) ...................................................................5

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Palp, Inc. v. Williamsburg Nat'l Ins. Co.*,
    200 Cal. App. 4th 282 (2011) ............................................................21

*PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*,
    394 F.3d 761 (9th Cir. 2005) ...........................................................21

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*,
    41 Cal. 3d 903 (1986) .....................................................................24

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ...................................................3, 22

*Smith Kandal Real Estate v. Cont'l Cas. Co.*,
    67 Cal. App. 4th 406 (1998) ..............................................................5

*Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*,
    X04CV020103527S, 2006 Conn. Super. LEXIS 2754
    (Conn. Super. Ct. Sept. 8, 2006)......................................................32

*State Farm Mut. Auto. Ins. Co. v. Jacober*,
    10 Cal. 3d 193 (1973) .....................................................................21

*State Farm Mut. Auto. Ins. Co. v. Partridge*,
    10 Cal. 3d 94 (1973) .......................................................................21

*Wallis v. Princess Cruises, Inc.*,
    306 F.3d 827 (9th Cir. 2002) .............................................................5

*Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*,
    68 Cal. App. 4th 1030 (1998) ............................................................5

STATUTES

28 U.S.C.
    § 1291..............................................................................................7
    § 1332(a) .........................................................................................7
    § 1334..............................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Securities Exchange Act of 1934 § 10(b) ...............................................................11

**RULES**

Fed. R. App. P.
    4(a)(1)(A).................................................................................................7
    32(a)(7)(C) ............................................................................................39

Fed. R. Civ. P. 30(b)(6).................................................................................18, 25

Ninth Circuit Rule
    28-2.6 ...................................................................................................37
    32-1 ......................................................................................................39

**OTHER AUTHORITIES**

William E. Knepper & Dan A. Bailey, *Liability of Corporate Officers &*
    *Directors* § 25.14 (8th ed. 2011) .......................................................23

## INTRODUCTION

The parties in this action seek a declaration as to whether certain claims-made insurance policies for the 2008-09 policy period (the "2008-09 Policies") provide coverage to officers and directors of IndyMac Bancorp, Inc. ("Bancorp") and its banking subsidiary, IndyMac Bank, F.S.B. (the "Bank") for various actions filed against them during the policy period. This is an appeal by three individual insureds who were officers of the Bank's Homebuilder Division ("HBD"), Scott Van Dellen, Richard Koon and Kenneth Shellem (collectively, the "HBD Insureds"), who seek a declaration that an action against them is covered under the 2008-09 Policies.

The underlying lawsuit against the HBD Insureds clearly would be covered, unless a policy exclusion applies. The District Court granted motions for summary judgment filed by the insurers and denied the HBD Insureds' own motion for partial summary judgment on the ground that certain exclusions did apply. ER: 10-20.[1] Each of the 2008-09 Policies contains exclusions (collectively, the "Tripp Exclusions" or the "Prior Act Exclusions"), differing slightly in language but functionally identical, for claims that are related to actions filed during a prior policy period, including specifically *Tripp. v. IndyMac Bancorp, Inc.,* Case No. 07-CV-1635-GW (the "Tripp Action").

The sole issue on this appeal is whether the Tripp Exclusions apply to exclude coverage for defense and indemnity in other, later-filed cases, including the case against the HBD Insureds, *Federal Deposit Insurance Corporation, as Receiver for IndyMac Bank, Federal Savings Bank v. Van Dellen,* United States

---

[1] As used herein, "ER" refers to the Appellants' Excerpts of Record, followed by the relevant page reference.

District Court for the Central District of California, Case No. CV 10-4915-DSF (the "HBD Action").[2]  In its summary judgment order, the District Court found each of the Tripp Exclusions to be unambiguous on its face and, based solely on the language of the exclusions, held that coverage for the HBD Action and other actions was excluded.  The District Court's interpretation and application of the Tripp Exclusions was wrong as a matter of law, and the HBD Insureds are entitled to judgment in their favor.

There is no dispute as to the underlying facts.  HBD was a separate unit within the Bank and had no involvement in single-family residential mortgage loans – the loans at issue in the Tripp Action – but instead provided short-term financing to developers of housing subdivisions.  The HBD Action was brought by the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the Bank, and alleged that certain Bank officers committed negligence and breached their fiduciary duties in authorizing 66 specific loans by HBD to developers.  In stark contrast, the *Tripp* case was a class action for securities fraud brought by Bancorp shareholders, alleging that certain public statements by Bancorp between January 2006 and January 2007 were false and misleading insofar as they failed to disclose that the Bank's Mortgage Banking Division did not properly underwrite and securitize single-family mortgage loans.  The District Court simply ignored the undisputed distinctions between the two cases, which involved different underwriting standards, different decision-makers, different plaintiffs, different defendants, different business units, different alleged wrongful acts, different legal

---

[2] This appeal has been consolidated with a number of other appeals in this case, including those filed by Alfred H. Siegel as Chapter 7 Trustee for IndyMac Bancorp, Inc. (the "Trustee") and Michael Perry, former CEO of Bancorp.  The Trustee and Mr. Perry are filing separate briefs on appeal.

theories, and different remedies.  Instead, in a breathtaking leap, the District Court found that the Tripp Exclusions applied to the HBD Action simply because, the Court said, both cases "shared in common" allegations that loans were approved "in violation of [the Bank's] underwriting standards."  ER: 18.

The District Court's interpretation of the Tripp Exclusions was erroneous as a matter of law.  It is well-established California law that (1) exclusionary language is to be construed narrowly; (2) any ambiguity must be resolved in favor of the insured; and (3) if there is *any* reasonable interpretation of a policy exclusion that allows for coverage, the exclusion cannot apply.  As discussed below, the District Court failed to follow all these and other key principles of law in ruling the Tripp Exclusions apply to the HBD Action.

As an initial matter, the District Court's interpretation of the Tripp Exclusions was so unduly broad that it improperly glossed over the substantial differences between the Tripp Action and the HBD Action.  The District Court's broad interpretation contravenes the requirement that exceptions be interpreted narrowly, and is wholly inconsistent with decisions of this Court in the context of insurance policy exclusions.  *See, e.g.*, *Eureka Fed. Sav. & Loan v. Am. Cas. Co.*, 873 F.2d 229, 234-35 (9th Cir. 1989) ("[T]he fact that all loan losses arguably originated from one loan policy does not require finding only one loss.").  Indeed, the District Court's interpretation was so broad that it essentially read the Tripp Exclusions to reach virtually all business of the Bank, effectively leaving the Insureds with no coverage.  "Under California law, [t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting."  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014-15 (9th Cir. 2012) (internal quotations omitted).  As the evidence

showed, the premiums charged by the Insurers for the 2008-09 Policies more than doubled those charged for the preceding year.  No party to the 2008-09 Policies could reasonably have expected that insurance policies costing so much would provide, for all practical purposes, no coverage.  This was error.

The District Court also erred when it found the Tripp Exclusions to be unambiguous.  The District Court considered, and adopted, only one interpretation, that of the Insurers.  However, the Tripp Exclusions, on their face, are susceptible to more than one reasonable interpretation, including the HBD Insureds' interpretation, which recognizes the sharp distinctions between the Tripp Action and the HBD Action.   In that respect, the District Court's interpretation of the Tripp Exclusions was inconsistent with the principle of California law that holds if there is any reasonable interpretation of a policy exclusion that allows for coverage, the exclusion cannot apply.

Finally, there is no dispute that the 2008-09 Policies would provide coverage for the HBD Action if the Tripp Exclusions did not apply.  Accordingly, consistent with the principles of California law, this Court can and should declare that the 2008-09 Policies provide indemnity and defense coverage to the HBD Insureds with regard to the HBD Action.

## ISSUES PRESENTED

1.    Whether the District Court erred in ruling that actions alleging different wrongful acts, brought by different plaintiffs, against different defendants, involving different business units, and seeking different damages may be deemed interrelated within the meaning of insurance policy exclusions if the two lawsuits had "any" fact in common.

2.     Whether the District Court erred in holding that the HBD Action – a negligence lawsuit focused on the approval of 66 large-dollar, short-term construction loans – was sufficiently related to the Tripp Action – a federal securities class action focused on allegedly false and misleading public statements in SEC filings relating to single-family mortgage loans – so that it was excluded from coverage under the Tripp Exclusions.

3.     Whether the District Court erred in denying the HBD Insureds' motions for summary judgment.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's grant of summary judgment." *Oswalt v. Resolute Indus., Inc*., 642 F.3d 856, 859 (9th Cir. 2011). "We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc*., 306 F.3d 827, 832 (9th Cir. 2002). The decision to grant or deny declaratory relief is reviewed *de novo*. *Nevada Dep't of Corrections v. Greene,* 648 F.3d 1014, 1018 (9th Cir. 2011); *Ablang v. Reno,* 52 F.3d 801, 803 (9th Cir.1995).

The proper construction of an insurance policy is a question of law. *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*, 68 Cal. App. 4th 1030, 1038 (1998). Furthermore, "[w]hether an exclusion is ambiguous and whether an insured has an objectively reasonable expectation of coverage under the insuring language are questions of law." *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 67 Cal. App. 4th 406, 415 (1998).

5

## STATEMENT OF THE CASE

### A.    Nature of the Case, Course of Proceedings and Disposition Below

This action is for declaratory relief concerning insurance coverage under the 2008-09 Policies.   It is undisputed that the HBD Action would be covered under the 2008-09 Policies unless an exclusion applies.  The sole issue in this appeal is whether the Tripp Exclusions bar coverage for the HBD Action.

This action was filed in March 2011 by four insurers:  XL, Arch, ACE, and Axis.   Five additional insurers (Lloyd's, Catlin, Zurich, Twin City, and Continental) became parties through intervention or as counterclaim defendants. These nine parties (all appellees in this Court) are collectively referred to as the "Insurers."  They issued the 2008-09 Policies.

The HBD Insureds and the Insurers cross-moved for summary judgment.[3] No one contended that genuine issues of material fact existed.   Rather, the competing summary judgment motions argued that the undisputed facts – *i.e.*, the language of the 2008-09 Policies, the testimony of the Insurer representatives who drafted and administered those policies, and the allegations made and resolved in the HBD Action and the Tripp Action – compelled judgment in favor of either the Insurers or the HBD Insureds.

On June 27, 2012, the District Court granted the Insurers' motions for summary judgment and denied the HBD Insureds' cross-motion. ER: 10-20.  The district court thereafter entered final judgment, ER: 21-24, from which the HBD Insureds and the other defendants below timely appealed.   ER: 25-31, 44-51, 57-63, 81, 86-94, 111-119.

---

[3] Other defendants and the Trustee also moved separately for summary judgment. ER: 10-20.

**B.    Jurisdiction and Timeliness**

The district court had original jurisdiction pursuant to 28 U.S.C. §§ 1332(a) & 1334.  On June 27, 2012, the district court granted summary judgment on all claims and as to all parties, and entered final judgment on July 3, 2012.  ER: 10-24.  Mr. Van Dellen timely appealed on July 12, 2012.  ER: 44-51; Mr. Koon and Mr. Shellem timely appealed on July 20, 2012.  ER: 111-119.  *See* Fed. R. App. P. 4(a)(1)(A).  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

**C.    Statement of Facts**

**1.    The HBD Action**

The HBD Action relates solely to 66 specific loans made by the Homebuilder Division of IndyMac Bank.  As will be shown, the HBD Action is substantively distinct from the Tripp Action.

**a)    The Business Of HBD – The Bank's Homebuilder Division**[4]

The Bank's Homebuilder Division made large loans to construction developers who designed, planned and built housing sub-divisions.  Those construction borrowers repaid the principal and interest on the loans by selling newly-built houses or condominiums.  These loans were typically for $5 million or more.  Some HBD loans were made so the construction developer could purchase empty parcels, develop subdivisions, run power, sewage, and water lines, grade the parcel, and then build homes (known as acquisition, development and construction ("AD&C") loans).  The builders would receive distributions from the total loan amount over the life of the loan as the construction project proceeded in stages.  As

---

[4] All of the facts concerning the business of the HBD were set forth in the HBD Insureds' motion for partial summary judgment and are undisputed.  *See* ER: 1190-1191.

the houses or condominiums were sold, the loans were repaid to the Bank. HBD's loans were typically for relatively short periods of time, generally 18 to 24 months. The loans were generally collateralized by equity in the project, sometimes bolstered by the personal guarantees of the builders.

Each loan was individually underwritten by account officers and credit officers within HBD who had experience in the specialized world of AD&C loans. By contrast, the Bank's mortgage bank – which made comparatively-straightforward mortgage loans to individuals wishing to buy a single-family home – had no involvement in HBD's lending practices. The two groups had entirely different underwriting guidelines, customers, and employees. Unlike individual single-family residential ("SFR") mortgages, HBD loans were never pooled together and packaged as securities.

Significantly, HBD loans were underwritten pursuant to separate and distinct HBD-specific policies and procedures that had nothing to do with the origination, underwriting or securitization of loans in the Bank's other divisions, such as SFR mortgages. HBD, which constituted only about 5% of the Bank's total business, was a separately functioning division with its own executives, its own underwriters and underwriting guidelines, and its own customer base of construction developers. HBD executives were not involved in the activities of the Bank's mortgage bank with respect to the origination or securitization of SFR mortgages. In short, the HBD business model could not have been more different from the activities of the Bank at issue in the Tripp Action, which focused on the origination and securitization of SFR mortgages, typically Alt-A loans. ER: 583-585.

**b)**     **Allegations in the HBD Action**

The HBD Action arose out of a claim asserted on March 27, 2009, against Defendants Shellem, Koon, and Van Dellen.  That claim gave rise to the complaint filed in the HBD Action by the FDIC, as Receiver for the Bank, on July 2, 2010, against Defendants Shellem, Koon, Van Dellen, and Rothman (the "HBD Complaint").  ER: 687-1004.  The allegations in the HBD Action involve unique facts arising solely out of the Bank's separate Homebuilder Division.  *See id*. at ¶¶ 1-8, 24-67; ER: 695, 700-716.  Due to the separate and distinct nature of HBD's business, the HBD Complaint contains highly individualized claims about particular AD&C loans that HBD made to specific developers.  *See id*.[5]  Sixty-six of the HBD Complaint's 68 separate Counts allege claims for negligence and breach of the duty of care against the defendants for approving 66 different specific AD&C loans.  *See id*. at ¶¶ 75-787; ER:  720-1001.  The HBD Complaint seeks damages on behalf of the Bank based on the non-performance or partial performance of each loan.  *See id*.

The HBD Complaint contains no allegations relating to negligent origination and securitization of SFR mortgages and no alleged misstatements about the same by Bancorp or the Bank in public statements.  Instead, the HBD Complaint focuses

---

[5]   *See* HBD Complaint, ER: 720-999, at ¶¶75-77, 83-93, 99-105, 111-113, 119-121, 127-129, 135-145, 151-153, 159-161, 167-169, 175-177, 183-185, 191-193, 199-201, 207-209, 215-224, 230-242, 248-256, 262-267, 273-280, 286-292, 298-302, 308-310, 316-318, 324-326, 332-334, 340-342, 348-350, 356-358, 364-366, 372-378, 384-391, 397-406, 412-418, 424-429, 435-441, 447-449, 455-457, 463-465, 471-481, 487-492, 498-500, 506-510, 516-520, 526-528, 534-543, 549-558, 564-566, 572-581, 587-593, 599-605, 611-616, 622-627, 633-639, 645-650, 656-663, 669-681, 687-692, 698-703, 709-714, 720-729, 735-742, 748-757, 763-766, 772-775, 781-783.

on allegations of negligence in connection with specific HBD loans.  For example, the HBD Complaint alleges:

- "Groundwater contamination near the project site had caused a plume under most of the project site, and a rendering plant was located close to the site causing bad odors, each of which created a substantial hurdle for development, and constituted potential sources of cost increases and absorption problems." HBD Compl. ¶161d, Corinthian Homes Anatolia Project (ER: 753);

- "Another substantial client of IndyMac . . . was also building [in the project's community], creating a scenario where two HBD clients were competing against each other."  *Id*. at ¶ 177c, Corinthian Homes Edgewater Project (ER: 760);

- "Although the project site was located over an hour's drive from Sacramento, the market conditions analyzed [in the Credit Approval Memorandum] were for the Sacramento region, not the more relevant immediate area around Linda." *Id*. at ¶ 326c, Reynen & Bardis Quail Hollow Project (ER: 818);

- "The project only had a proposed tentative tract map, and the borrower planned to seek an amendment to the tentative map with uncertain approval of such a request or the final map." *Id*. at ¶ 334d, Reynen & Bardis Oak Valley Project (ER: 822-823); and

- "Van Dellen, Shellem, and Rothman approved this loan despite a statement in the CAM that the borrower had no profit incentive to complete the project because the land seller was entitled to over $2 million for the return of his

10

equity, 7% interest on the note, and 40% of the project's net proceeds." *Id.* at ¶ 663e, PPC Westwood Country 3, LLC Inspirations Project (ER: 952).

As demonstrated below, claims about HBD loans and the specific construction-related problems they encountered are far removed from the allegations in *Tripp*. The only thing in common between the HBD Action and the Tripp Action is that they both relate in some way to the lending business of the Bank.

### 2.    The Tripp Action

The original Complaint in *Tripp* was filed in March 2007. ER: 525-577. It was a class action securities fraud case brought by Bancorp shareholders alleging that certain public statements made by Bancorp between January 2006 and January 2007 were false and misleading. ER: 525-577. The *Tripp* Complaint alleged that the statements were materially false because they "failed to disclose the [Bank's] inadequate internal controls or that [the Bank's] underwriting guidelines and loss provisions were inadequate to manage the risk of loan delinquencies." ER: 546-547. None of the defendants in the HBD Action were sued in the Tripp Action, nor were any of the *Tripp* defendants sued in the HBD Action. This complete lack of overlap is telling: Mr. Shellem, Mr. Koon, and Mr. Van Dellen had no involvement in the SFR mortgages at issue in *Tripp*.

The *Tripp* plaintiffs sought damages resulting from their purchase of Bancorp stock prior to March 1, 2007 at artificially inflated prices, in reliance on Bancorp's alleged 2006-era misstatements and omissions. ER: 536-554. The Complaint alleged violations of section 10(b) of the Securities Exchange Act of 1934.

It is also telling that the *Tripp* Sixth Amended Complaint (which is 79 pages long and contains 239 paragraphs) does not include a single reference to the

11

conduct underlying the HBD Action, or to HBD at all.  But beyond these obvious differences, the gravamen of the Tripp Action differs entirely from that of the HBD Action.  A review of the *Tripp* Complaint shows that it is completely oriented towards alleged fraud related to single-family residential loans.  *See Tripp* Complaint, at ¶¶ 46, 50, 54, 63, 69, 78, 215 (ER: 594-595, 596, 598-599, 600-601, 603, 676-677).  In short, *Tripp* is *only* about allegedly misleading statements concerning the Bank's single-family residential mortgage lending practices.  This is seen throughout the *Tripp* Complaint, including, by way of example:

- "The booming real estate market opened up new opportunities for the Company to deal in higher-risk loans.  IndyMac's mortgage production during this time was focused on the adjustable rate mortgage and 80/20 piggyback product mix."  *Id.* at ¶ 4 (ER: 583).  The *Tripp* Complaint articulate that the "high-risk" loans being criticized in the lawsuit are home mortgages, not AD&C loans.

- In the section titled "Underwriting Background" (which highlights what the lawsuit is about), the *Tripp* Complaint refers to underwriting in the context of mortgage lending.  *Id.* at ¶ 31 (ER: 590).  The "Underwriting Background" section speaks exclusively about single-family residential mortgage lending.  *See id.* at ¶¶ 31-34(d) (ER: 590-592).  Once again, there is no mention of AD&C lending done by the HBD.

12

It is crystal clear that the HBD Action and the Tripp Action have significant structural and substantive differences, as summarized below.

|  | Tripp Action | HBD Action |
|---|---|---|
| **Type of Action** | Securities fraud class action | Negligence |
| **Plaintiffs** | Shareholders of IndyMac Bancorp, Inc. | FDIC, as Receiver for IndyMac Bank |
| **Defendants** | Directors and officers of Bancorp | One officer of the Bank, and two officers of the Homebuilder Division of the Bank |
| **Alleged Wrongful Acts** | False and misleading statements in the SEC filings and press releases of Bancorp, the holding company of the Bank, relating to underwriting and securitizing of SFR mortgages by Bank's Mortgage Banking Division | Negligent approval of 66 high-dollar, short-term AD&C loans made by Bank's Homebuilder Division |
| **IndyMac Business Units Involved** | Mortgage Banking Division, which originated and securitized thousands of SFR | Homebuilder Division, which accounted for only 5% of the Bank's loans, and which had |

13

| | mortgages | its own unique underwriting guidelines, customers, employees, and executives |
|---|---|---|
| **Damages** | Loss of share price suffered by purchasers of Bancorp stock | Loan losses suffered by the Bank due to 66 specific underperforming AD&C loans |

### 3.    Bancorp's Insurance Program[6]

In March 2007, Bancorp's insurance program (the 2007-08 Policies) consisted of a "tower" of eight policies of $10 million each, providing $80 million in aggregate claims-made coverage. ER: 12.[7] As *Tripp* was being litigated, Bancorp began negotiating for the 2008-09 Policies. *See, e.g.*, ER: 1468-73 (underwriting worksheet dated April 2008). During those negotiations, all but one of the same insurers issuing Bancorp's 2007-08 Policies sought Bancorp's continued business for the 2008-09 policy year. Internal underwriting documents produced during discovery reveal that the insurers sought to "ring-fence" the prior policy year's liabilities by excluding "any new claims that are pleaded on the same grounds as the '*Tripp* Litigation.'" ER: 1469-70.

Once again, for 2008-09, the Insurers issued a "tower" of eight policies, each providing $10 million in insurance. ER: 189-352. In return for their promise of

---

[6] The Trustee's Brief on Appeal contains a more detailed description of the 2008-09 Policies. To avoid duplication, the HBD Insureds join in and incorporate by reference the description found at Statement of Relevant Facts part B of the Trustee's Brief.

[7] The district court sometimes referred to the 2007-08 Policies as "Tower One," and to the 2008-09 Policies as "Tower Two." ER: 10-12.

coverage, the Insurers charged a total of $6 million in premiums – 2.5 times what Bancorp paid for the 2007-08 Policies.  ER: 1475.  *See also* ER: 1380-81 (XL underwriter testifying that "the premium justified the risks").

The 2008-09 Policies are claims-made policies, "which means that coverage is provided for claims that are made during the policy period."  ER: 13.  The policies contain a series of exclusions which were intended to prevent policyholders from tendering the same claim in multiple policy years.  *Tripp* was filed during the 2007-08 policy period and was defended (for a period of time) by the 2007-08 insurers.  Because *Tripp* is allocated to the 2007-08 Policies, it, and other lawsuits sufficiently connected to it, are excluded from the 2008-09 Policies.

The 2008-09 Policies contain a broad insuring clause, which provides that the Insurers "shall pay on behalf of the Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Policy Period for an Individual Act."  ER: 189-368.

The 2008-09 Policies also contain several exclusions.  Those relevant here all work in some fashion to exclude claims that bear a sufficient relationship to claims made under prior policy years.  So, for example, there is a general form exclusion for any "Claim" that is "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:  (1) any Wrongful Act or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period under any other . . . policy, or (2) any other Wrongful Act whenever occurring, which, together with a Wrongful Act which has been the subject of such notice, would constitute Interrelated Wrongful Acts."  ER: 207.  The defined term "Interrelated Wrongful Acts," in turn, means "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event,

transaction or series of facts, circumstances, situations, events or transactions." ER: 205. Additionally, there is an exclusion for claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the following: 1. the [Tripp Action]; or 2. any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions underlying or alleged in the [Tripp Action], regardless of any legal theory upon which such Claim is predicated." ER: 230. For ease of reference, and because the effect and analysis of each exclusion is identical, the HBD Insureds refer to these exclusions collectively as the "Tripp Exclusions."

### 4. The District Court's Decision

In ruling on the cross-motions for summary judgment, the District Court concluded that the Tripp Exclusions were unambiguous, and then construed the exclusions in the broadest possible manner: "The Court will therefore construe any of the Underlying Actions as interrelated wrongful acts with the Tripp Litigation – and excluded from coverage under the Tower 2 policies – if they have in common *any* of the same underlying facts, circumstances, events or series of facts, circumstances, events . . .The Tripp Exclusion covers within its scope, and excludes from coverage, cases that have a broad range of relationships to the facts of the Tripp Litigation." (emphasis added). ER: 15.

With respect to the HBD Action, the District Court's entire analysis (and conclusion) is contained in two brief paragraphs:

> The FDIC-HBD Matter focuses specifically on the actions of the Home Builders Division ("HBD"), rather than IndyMac as a whole. However, the allegations center on the fact that the HBD approved loans in violation of IndyMac's underwriting standards, allegations that are shared in common with the Tripp Litigation. For the reasons

16

discussed in Section IV, B, 2, the FDIC-HBD Matter falls and is excluded from indemnification and defense costs under the Tower 2 policies.[8]

Therefore, the Court **grants** the Insurer and Twin City Motions for Summary Judgment as to all claims and counterclaims that deal with the FDIC-HBD Matter and **denies** the Van Dellen Motion for Summary Judgment.

ER: 18.

Thus, sweeping all distinctions aside, the District Court determined that because the HBD Action and the Tripp Action both alleged that loans were made "in violation of IndyMac's underwriting standards," the cases were sufficiently related so as to deny all coverage to the HBD Insureds. The fact that the two cases involved different plaintiffs, different defendants, different business units, different alleged wrongful acts, different legal theories, different damages – and indeed, different underwriting standards – did not matter.

In reaching this conclusion, the District Court also refused to consider testimony regarding multiple interpretations of the Tripp Exclusions: "Further, Defendants cannot establish ambiguity by noting that certain underwriters employed by the Insureds [*sic*] offered multiple suggested meanings for the scope of interrelated wrongful acts. The employees are not lawyers and thus the relevance of their opinion is questionable at best." ER 15.

---

[8] While the Opinion cross-references to Section IV.B.2 of the Opinion, that section relates only to a separate and unrelated FDIC demand against Perry and other parties, and ensuing separate litigation against Perry, both of which, like the Tripp Action, had nothing to do with the Homebuilder Division or the HBD loans. Thus, that section does not support in any way the Court's determination that the HBD Action was related to the Tripp Action.

17

The testimony the District Court failed to consider included testimony taken of the insurance representatives who drafted and entered into the 2008-09 Policies on behalf of their Insurer-employers.  In the Rule 30(b)(6) deposition of Lloyd's, the primary insurer, its designated representatives testified that in drafting the Prior Acts Exclusions, "we were looking to exclude any allegation involving the same nature of claims or allegations made in the *Tripp* litigation," ER: 1143, and that "anything non-*Tripp* related" would not be excluded, ER: 1461.  This testimony is consistent with Lloyds' internal underwriting analysis (used to calculate the premium for the 2008-09 Policies), which stated that the exclusions "ha[ve] the effect of" eliminating coverage for "any new claims that are pleaded on the same grounds as the *Tripp* Litigation."  ER: 1469.

In addition, XL's representative testified that the exclusions would eliminate coverage for "the *Tripp* litigation and any related claims that come out of the *Tripp* litigation or were related to the *Tripp* litigation."  ER: 1390-91.  When pressed for an explanation of how he understood the term "related," the underwriter responded:  "I mean, claims that allege similar wrongful acts to the ones that are stated in the *Tripp* litigation," ER: 1392.

As we show below, the District Court failed to follow California law in finding the very disparate HBD Action and Tripp Action interrelated for purposes of the exclusions.

## SUMMARY OF ARGUMENT

The District Court's broad interpretation of the Tripp Exclusions cannot be affirmed.  Under applicable law governing the interpretation of insurance contracts such as the 2008-09 Policies, exclusionary language is to be construed narrowly, ambiguity is to be resolved in favor of the insured, and if there is any reasonable

interpretation that affords coverage, the exclusion cannot apply.  The District Court ignored all of these precepts.  Instead, the District Court gave the Tripp Exclusions the broadest possible reading, did not consider evidence of alternate interpretations, and ignored the very reasonable interpretation that would have afforded coverage to the insureds.

Properly construed, the operative terms of the Tripp Exclusions require a nexus between the Tripp Action and the HBD Action more substantial than a mere common fact.  Here the two cases were not substantially related in any way, involving different kinds of loans, different underwriting standards, different decision-makers in different divisions of the Bank, different plaintiffs, different defendants, different alleged wrongful acts, different legal theories, and different remedies.  There is no material overlap between the cases, and the Tripp Exclusions cannot apply.

Even under general rules of contract interpretation this must be so.  The fundamental goal of contract interpretation is to give effect to the intent of the parties at the time the contract was made.  As interpreted by the District Court, the Tripp Exclusions apply to any activity by the insured Bank and its directors and officers that in any way involved allegations of the Banks's "underwriting standards."  Putting aside the vagueness of this term, underwriting loans was the business of the Bank, as it is of any bank.  As construed by the District Court, then, the 2008-09 Policies would not provide any coverage for the fundamental business of the Bank.  Nevertheless, the insurers more than doubled the premium charged for the 2008-09 Policies over the previous year, to $6 million.  The parties cannot reasonably have intended that the Bank would pay such an enormous increase in premiums for policies that effectively provided no coverage for the Bank's

19

business.  In this context, which the District Court was bound to consider, its interpretation of the Tripp Exclusions would result in an illusory contract and is patently unreasonable.

Under a reasonable interpretation of the Tripp Exclusions, in the absence of some material nexus between the Tripp Action and the HBD Action, the exclusions cannot apply.  There is no such nexus.  That being so, the HBD Insureds are entitled to a declaration that the 2008-09 Policies provide coverage for both defense and indemnity of the HBD Action.

## ARGUMENT

### A.    The District Court Erred in Broadly Interpreting the Exclusions to Deny All Coverage.

It is not disputed that the HBD Action falls within the definition of a "Claim" under the 2008-09 Policies and that proper and timely notice was given to the Insurers.  The Insurers, however, denied coverage for the HBD Action, taking the position that the Tripp Exclusions applied.  Under California law, the Insurers have the burden of showing that an exclusion applies.  *Markel Am. Ins. Co. v. G.L. Anderson Ins. Servs., Inc.,* 715 F. Supp. 2d 1068, 1076 (E.D. Cal. 2010) (citing both California state and federal authorities and holding that "[a]n insurer bears the burden of proof in proving that a . . . policy exclusion or limitation applies to bar or limit coverage under an insurance policy").

### 1.    California law requires exclusions to be interpreted narrowly, favoring coverage, unless the insurer's interpretation is the only reasonable interpretation.

As this Court noted in *Bodell v. Walbrook Insurance Co.*, 119 F.3d 1411, 1413 (9th Cir 1997):  "We are guided in our approach by California law, which teaches that insurance policies are to be broadly construed to afford the greatest

possible protection to the insured." (citing *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal. 3d 94 (1973).

Accordingly, exclusions are interpreted narrowly. "An insurance policy's coverage provisions must be interpreted broadly to afford the insured the greatest possible protection, while *a policy's exclusions must be interpreted narrowly against the insurer*." *Palp, Inc. v. Williamsburg Nat'l Ins. Co.,* 200 Cal. App. 4th 282, 290 (2011) (emphasis added).

If any reasonable interpretation of the policy would result in coverage, a court must find coverage even if other reasonable interpretations would preclude coverage. *Bodell,* 119 F.3d at 1413; *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193 (1973).

"[E]ven if [the insurer's] interpretation is considered reasonable, it would still not prevail . . . [unless the insurer can] establish that its interpretation is *the only reasonable one.*" *MacKinnon v. Truck Ins. Exch.,* 31 Cal. 4th 635, 655 (2003) (emphasis added); *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.,* 394 F.3d 761, 765 n.5 (9th Cir. 2005) ("This passage in *MacKinnon* addresses *exclusionary* clauses specifically. While the prevailing rule as to ordinary coverage provisions also favors the insured . . . it is substantially less stringent than the rule cited here, which is specific to exclusionary clauses.").

### 2. California law requires consideration of the parties' expectations and the context of the policy.

In reaching its decision to deny coverage, the District Court rejected out of hand the alternative reasonable interpretation offered by the HBD Insureds. This, too, was contrary to California law. In so doing, the District Court did not consider the context of the policies and the reasonable expectations of the insureds.

"Under California law, [t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Skilstaf, Inc.,* 669 F.3d at 1014-15. But contract language is not the only evidence a court may consider. "Because California law recognizes that the words of a written instrument often lack a clear meaning apart from the context in which the words are written, courts may preliminarily consider any extrinsic evidence offered by the parties." *Id.* at 1015 (quoting *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 989-90 (9th Cir. 2006)). Therefore, the parties' mutual intention can be shown by evidence of the "surrounding circumstances under which the parties negotiated or entered into the contract." *Morey v. Vannucci,* 64 Cal. App. 4th 904, 912 (1998). Thus, "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of a contract is reasonably susceptible." *Id.*

"Where the meaning of the words used in a contract is disputed, the trial court *must* provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." *Morey,* 64 Cal. App. 4th at 912 (internal citations omitted). "*Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract appears clear and unambiguous on its face.*" *Id.* (emphasis added); *accord First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust,* 631 F.3d 1058, 1067 (9th Cir. 2011).

In *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.*, 5 Cal. 4th 854, 867 (1993), the California Supreme Court noted that while policy language is crucial, "[e]qually important are the requirements of reasonableness

and context. . .'An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable'. . .'[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract. . . 'There cannot be an ambiguity per se, i.e. an ambiguity unrelated to an application.'" (internal citations omitted). "The proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case." *Id*. at 868 (citing *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1265 (1992).

In determining the reasonableness of the expectations of the insured in entering into a policy containing an exclusion, an important inquiry is to examine the purpose of the exclusionary clause at issue. Because claims-made policies cover claims made within a policy period, regardless of when the facts underlying the claim occurred, the "interrelated acts" or interrelated claims exclusion is often included in policies to avoid an insured reporting two claims, and obtaining two policy limits, for the same or functionally identical factual predicate alleged in two different lawsuits. *See Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 120 Cal. App 4th 17, 26-27 (2004) (finding that patient's malpractice claim and subsequent battery claim constituted a "series of related acts" because they "were literally part of the same series of interconnected events that took place in the surgery room on a particular day"); *Feldman v. Illinois Union Ins. Co.,* 198 Cal. App. 4th 1495, 1502, 1504 (2011) (cross-complaints filed in two different years fell within the exclusion, despite addition of new claims and defendants because both were based on exactly the same alleged fraudulent transfer of assets). "The exclusion is generally found to be applicable to multiple lawsuits that are based on the same allegations, irrespective of whether the allegations are true and

23

notwithstanding the particular causes of action pleaded in each suit." *See* William E. Knepper & Dan A. Bailey, *Liability of Corporate Officers & Directors* § 25.14 (8th ed. 2011). Until the District Court's decision in this case, such provisions have never been applied to exclude coverage simply because there was "*any* fact" or circumstance in common between the earlier and later lawsuits.

In *Church Mutual Insurance Co. v. United States Liability Insurance Co.*, 347 F. Supp. 2d 880, 886 (S.D. Cal. 2004), the court refused to adopt the insurer's interpretation of an exclusion because the "evisceration of coverage" which would result "indicates that the parties apparently did not intend the exclusion to be read so expansively." The court recognized that "[i]t is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage." *Id.* (*citing Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal. 3d 903, 912 (1986)) (emphasis in original).

In *HS Services, Inc. v. Nationwide Mutual Insurance Co.*, 109 F.3d 642, 645 (9th Cir. 1997), this Court narrowly interpreted an exclusion in favor of the insured's reasonable expectation of coverage. In that case, a former president of the insured alleged that he was wrongfully terminated, and subsequently added a defamation claim. The employer's insurance policy provided coverage for claims of personal injury caused by libel and slander, but excluded coverage for injury arising out of employment-related practices, including termination. This Court, finding that the literal and broad interpretation of the exclusion would exclude any claim connected in any way with employment termination, no matter how attenuated the connection, refused to apply the exclusion in its literal and broad meaning in order to protect the insured's reasonable expectation of coverage:

24

> Read literally and broadly, the terms "arising out of" and "employment-related . . . acts or omissions" would include any claim or injury connected in any way with employment termination, no matter how attenuated that connection. . . We do not think the parties mutually intended the exclusion to be read so expansively. Our "fundamental goal" in interpreting this exclusion must be "to give effect to the mutual intention of the parties."

*Id.* (citing *Bank of the West*, 2 Cal. 4th at 1264).

### 3. Undisputed evidence below demonstrated an ambiguity that required a narrow interpretation.

The District Court determined that the Tripp Exclusions were unambiguous, and refused to consider evidence to the contrary. This was error.

#### a) Testimony of the insurers' representatives precluded a finding that only one reasonable interpretation existed.

As detailed in the Trustee's Brief in the Statement of Relevant Facts, Section E, pp. 21-25, in the Argument, Section II.B, pp. 54-57, and at ER: 407-08, the insurers' own representatives had no uniform or even consistent understanding of the scope of the Tripp Exclusions. In the Rule 30(b)(6) deposition of Lloyd's, the primary insurer, its designated representatives testified that in drafting the Prior Acts Exclusions, "we were looking to exclude any allegation involving the same nature of claims or allegations made in the *Tripp* litigation," ER: 1143, and that "anything non-*Tripp* related" would not be excluded, ER: 1461. This testimony is consistent with Lloyds' internal underwriting analysis (used to calculate the premium for the 2008-09 Policies), which stated that the exclusions "ha[ve] the effect of" eliminating coverage for "any new claims that are pleaded on the same grounds as the *Tripp* Litigation." ER: 1469.

25

In addition, XL's representative testified that the exclusions would eliminate coverage for "the *Tripp* litigation and any related claims that come out of the *Tripp* litigation or were related to the *Tripp* litigation." ER: 1391-91. When pressed for an explanation of how he understood the term "related," the underwriter responded: "I mean, *claims that allege similar wrongful acts* to the ones that are stated in the *Tripp* litigation," ER: 1392 (emphasis added).

The conflicting insurer testimony in itself should have been conclusive evidence that the exclusions were at best ambiguous. Because any ambiguity must be resolved in favor of any reasonable interpretation providing coverage, *MacKinnon,* 31. Cal. 4th at 655, consideration of the extrinsic testimony of the insurer representatives would have led to a conclusion that the Tripp Exclusions do not apply to the HBD Action. But the District Court rejected that evidence with the simple statement that the representatives were not lawyers: "Further, Defendants cannot establish ambiguity by noting that certain underwriters employed by the Insureds [*sic*] offered multiple suggested meanings for the scope of interrelated wrongful acts. The employees are not lawyers and thus the relevance of their opinion is questionable at best." ER: 15. This casual dismissal of the evidence ignored the basic tenet of insurance interpretation that "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Bodell*, 119 F.3d at 1413; *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971).

The District Court, thus, should have considered the extrinsic evidence, but chose to ignore it. This was error. When considered, the extrinsic evidence shows the Tripp Exclusion is susceptible to interpretation and that the Insurers' broad interpretation is not the only reasonable one. *See Bodell*, 119 F.3d at 1420;

*MacKinnon,* 31 Cal. 4th at 655.  Because Insurers did not establish that their broad interpretation of the Tripp Exclusion was the only reasonable one, they failed to meet their burden that the exclusions applied.  *See Markel* 715 F. Supp. 2d at 1078.

>            **b)    The substantially increased premiums demonstrated that the insureds' expectations of narrowly applied exclusions were reasonable.**

In addition to the insurers' own testimony, the District Court also had before it even more telling extrinsic evidence that refuted the no-coverage position taken by the Insurers:  that those same insurers, even while including the Tripp Exclusions in the 2008-09 Policies, more than doubled the premiums compared to those charged for the prior year.  Yet the District Court did not even mention this evidence in its decision.

Under settled California law, the amount of the premium paid by the insured is relevant in determining the insured's reasonable expectations relating to coverage.  *Clarendon Am. Ins. Co. v. N. Am. Capacity Ins. Co.,* 186 Cal. App. 4th 556, 574-75 (2010) (insured paying $404,000 for $2 million policy covering 450 homes could reasonably expect that self-insured retention applied to lawsuit as a whole, rather than to individual homes); *Desai v. Farmers Ins. Exch.*, 47 Cal. App. 4th 1110, 1118 (1996) (where insured paid additional annual premium for "replacement cost" homeowners coverage, insurer's attempt to restrict its liability to amount of policy limit was contrary to reasonable expectations of insured; dismissal in favor of insurer reversed).  In this case, IndyMac's agreement to pay a premium two-and-a-half times larger for the 2008-09 Policies as compared with the 2007-08 Policies refutes the insurers' position that the later policies provided no coverage whatsoever for any claim that involved loan underwriting – the core business of the Bank.

27

Under the District Court's interpretation of the exclusions, there was no coverage under the 2008-09 Policies for any claim involving alleged violations of the Bank's underwriting standards, *i.e.*, any claim relating to the making of loans. Making loans was a primary cornerstone of the Bank's business, as it is of virtually every bank. The lodestar of contract interpretation is the mutual intent of the parties at the time of entering the contract. By this measure, the parties to the 2008-09 Policies cannot plausibly have intended that the policies would provide no coverage for the fundamental business of the Bank. Such an agreement would be illusory, and objectively unreasonable. That being so, the District Court's interpretation of the Tripp Exclusions cannot be correct, and its grant of summary judgment against the HBD Insureds cannot be affirmed.

The District Court refused to engage in any assessment of the context in which the 2008-09 Policies were issued, refusing even to consider extrinsic evidence proffered by the insureds demonstrating that the Tripp Exclusions were at best ambiguous and could not be given the broad interpretation favored by the Insurers.

As the California Court of Appeal has said, "we must consider the purportedly ambiguous language in the context of the entire policy and the actual claim." *Cooper Cos. v. Transcon. Ins. Co.*, 31 Cal. App. 4th 1094, 1104 (1995). Here, the District Court failed to follow this fundamental legal tenet.

### 4. The District Court's conclusion – that "any" common fact triggers the exclusions – is at odds with Ninth Circuit and California precedent.

In two leading cases, this Court has rejected arguments by insurers that actions that shared one or even a few common facts were sufficiently related so as to trigger exclusions similar to the Tripp Exclusions.

In *Financial Management Advisors, LLC v. American International Specialty Lines Insurance Co.*, 506 F.3d 922 (9th Cir. 2007) ("*FMA*"), this Court considered a case in which two different clients of an investment advisory company separately sued the company for misrepresenting the safety of the same type of collateralized bond obligation investments. Both plaintiffs complained about the conduct of the same broker. The insurer argued that the two claims "were 'related' because both involved material misrepresentations made by the same financial advisor about the risk of investing in CBO II." *Id*. at 925. Interpreting the contract under California law, this Court found that, even though the claims shared a common legal theory (misrepresentation of the safety of a particular investment) and shared many of the same common facts (including the identity of the broker who advised both clients, and some of the same risky investments), such similarities did not mean that the two claims "ar[ose] out of the same or related Wrongful Acts." *Id*. "We do not believe the term 'related' was intended to bar recovery whenever two parties are advised to invest in the same fund. Nor are the Sitrick and Steinman Claims logically related simply because both claimants blamed the same financial advisor." *Id*. at 926.

In *Eureka Federal Savings & Loan v. American Casualty Co.*, 873 F.2d 229 (9th Cir. 1989), this Court addressed the issue of whether "interrelated acts" provision operated to limit coverage, where separate claims were based on alleged violations of the same underwriting policy. In *Eureka,* as here, the underlying claimants alleged that a bank's poor loan underwriting practices ultimately led to its failure. But unlike in *Eureka,* here there are two separate divisions at issue: the Bank's Homebuilder Division had completely separate underwriting guidelines from those used for single-family residential mortgages. In E*ureka*, the bank's

insurers contended that all claims relating to the poor underwriting constituted a single loss under the D&O insurance policy. *Id.* at 234. ("[The insurer] claims that the alleged losses . . . constitute a single loss under the policy because they resulted from an aggressive lending strategy adopted by Eureka in 1983 to reverse chronic operating losses.").

This Court noted that the "critical question is whether the losses. . . arose out of the same act (the loan policy) or are otherwise sufficiently interrelated to be considered a single loss. The alleged breaches of fiduciary duty in *Kidwell* include funding loans without approval, failing to complete proper loan documents, failing to perfect security interests or obtain adequate collateral, funding loans in excess of approval limits to one borrower, selling participation interests with recourse to Eureka, and funding speculative loans without adequate sources of repayment or adequate risk analysis." *Id.*

This Court rejected the insurer's position, reasoning that "the fact that all loan losses arguably originated from one loan policy does not require finding only one loss." *Id.* at 234-35. "In this case there were numerous intervening business decisions that took place after the loan policy was initiated that required the exercise of independent business judgment." *Id.* at 235. "Thus, the decision to implement the aggressive loan policy did not cause the losses, rather it was the alleged negligence on the part of the [bank's officers] in making or approving the individual transactions." *Id.; see also Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 283 (9th Cir. 1986) (underlying lawsuits alleging several distinct acts involved more than one "loss" notwithstanding their culmination in one result, a bank's failure; "[O]ne result does not require finding only one 'loss.'").

In this case, three individual insureds sought defense and coverage of a claim asserted against them. Instead of reading the 2008-09 Policies to "afford the greatest possible protection" to the HBD Insureds, the District Court rejected coverage.

The District Court simply read the language of the Tripp Exclusions literally, found them unambiguous, and therefore concluded that they were extremely broad: "The Court will therefore construe any of the Underlying Actions as interrelated wrongful acts with the Tripp Litigation – and excluded from coverage under the Tower 2 policies – if they have in common *any* of the same underlying facts, circumstances, events or series of facts, circumstances, events . . . The Tripp Exclusion covers within its scope, and excludes from coverage, cases that have a broad range of relationships to the facts of the Tripp Litigation." (emphasis added). ER: 15.

It is clear from this Court's decisions in *FMA* and *Eureka* that more is required than *any* common fact or event before a later-filed action will be deemed to relate to a prior case for purposes of the Tripp Exclusions. Certainly, a shared general allegation – that both cases involved approval of loans in violation of underwriting standards – should not be enough. In *Eureka,* this Court held that "the mere existence of an aggressive loan policy is insufficient as a matter of law to transform disparate acts and omissions made by five directors in connection with issuance of loans to over 200 unrelated borrowers into a single loss." 873 F.2d at 235.

*Eureka* cites to another case with very similar facts. In *North River Insurance Co. v. Huff*, 628 F. Supp. 1129 (D. Kan. 1985), the court rejected an insurer's attempt to relate different loan losses because they were part of one loan

swap program. The court found that while the various transactions involved the same method of financing, they "occurred at separate times, involved different borrowers, were for different purposes, and had separate collateral." *Id*. at 1133. The court concluded that the "decision to institute the loan swap program did not cause any damage, rather it was the alleged negligence on the part of the insureds in making or approving unprofitable loans." *Id*. at 1133-34.

Many other courts have refused to apply broad exclusionary language literally when doing so would create an unreasonable result. *See, e.g.*, *Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 497 (1st Cir. 2005) (declining to adopt "broadest possible construction under which any overlapping fact between the two proceedings – for example the identity of Raytheon as the defendant – would trigger the exclusion"); *Southridge Capital Mgmt., LLC v. Twin City Fire Ins. Co.*, X04CV020103527S, 2006 Conn. Super. LEXIS 2754, at *28 (Conn. Super. Ct. Sept. 8, 2006) ("The courts recognize that some degree of relatedness is going to exist among almost any claims brought against an insured, especially in the field of directors' and officers' liability insurance, and there clearly have to be boundaries of some sort."); *Church Mutual,* 347 F. Supp. 2d at 885 (rejecting insurers' broad interpretation of "arising out of" exclusionary language that would have "include[d] any claim connected in any way . . . no matter how attenuated the connection").

Here, as demonstrated below, the HBD Action did not bear any substantial relationship to the Tripp Action. The District Court's conclusion that the HBD Action was encompassed within the ambit of the Tripp Exclusions was factually unsupported and relied upon the broadest, rather than the narrowest interpretation of the language of the exclusions.

32

**B.    The District Court Erred By Concluding that the HBD Action Was Related to the Tripp Action.**

The District Court rejected the HBD Insureds' position that the Tripp Exclusions did not apply because the HBD Action and the Tripp Action have no "substantial relationship," do not "substantially overlap," and do not share the "same gravamen."  Yet, based on the facts of the two cases, the HBD Insureds' position was the only reasonable conclusion.

**1.    The alleged wrongful acts were different.**

As described above, *Tripp* is a securities fraud class action brought by shareholders of Bancorp.  The *Tripp* plaintiffs alleged that Bancorp issued misleading public statements relating to the underwriting and securitization of SFR mortgages.  The HBD Action, on the other hand, alleges negligence in the approval of specifically-identified construction and development loans.

**2.    The actors and business entities were different.**

Like all big companies, the Bank had different divisions, and those divisions did very different things.  For all intents and purposes, the HBD group was a separate, autonomous entity within the Bank.  The loans it made, customers it served, underwriting practices it followed, and personnel it employed were entirely different from, and had no overlap with, the Bank's mortgage-lending operations regarding single-family residences.  ER: 1190-1191.  No fair reading of the *Tripp* Complaint could conclude that it was about the HBD group's lending practices.

**3.    The alleged victims and injuries were different.**

Unlike the Tripp Action, the HBD Action is not a class action, does not involve claims or allegations of securities fraud, is not related to the SEC filings of Bancorp, and in fact has nothing to do with Bancorp.  It seeks damages for entirely different conduct on behalf of entirely different types of claimants – a government

33

regulator acting as Receiver for the Bank as opposed to stock purchasers. The HBD Action does not involve claims or allegations related to the underwriting or securitization of SFR mortgages. It revolves exclusively around a discrete number of high-dollar, short-term, AD&C loans to home developers, about which there were no claims or allegations whatsoever in the Tripp Action. Compare *Tripp* Complaint, at ¶¶ 1-4, 7 (ER: 582-84) *with HBD* Complaint, at ¶¶ 1, 2, 4, 7, 75-787 (ER: 695, 696, 720-1001). The problems and issues that form the core of the HBD Action have nothing to do with those that form the core of the Tripp Action.

The District Court's interpretation of the Tripp Exclusions can be affirmed only if evaluated at a level of abstraction so general as to render the multitude of differences between the two actions virtually invisible. As noted above, this approach, which results in the very broadest possible coverage for the Tripp Exclusions, is contrary to California law mandating that exclusionary language be given the narrowest reasonable interpretation. When examined at any level below a deep-space orbit, it is obvious that the HBD Action bears no relationship to the Tripp Action.

## C. The District Court Erred in Denying the HBD Insureds' Motions for Summary Judgment.

As discussed above and in the Trustee's Brief at Section II of the Argument, pp. 50-57, under California law, so long as there is a reasonable construction of the Tripp Exclusions under which coverage would exist for the HBD Action, the exclusions would not apply. There is such a reasonable alternative construction, under which only those actions that are substantially related to the Tripp Action would be subject to the exclusions. The HBD Action is not sufficiently related to the Tripp Action to be encompassed within the Tripp Exclusions. There is no

dispute that the HBD Action would be covered by the 2008-09 Policies if the Tripp Exclusions do not apply.  Accordingly, the policies must provide coverage to the HBD Insureds for defense and indemnity regarding the HBD Action.

**CONCLUSION**

The HBD Insureds respectfully request that this Court reverse the judgment below and issue a declaration that the 2008-09 Policies provide both defense and indemnity coverage to the HBD Insureds for the HBD Action.

Respectfully submitted,

Dated:  April 22, 2013

CORBIN, ATHEY & MARTINEZ, LLP
Damian Martinez (State Bar No. 200159)
Amir Kaltgrad (State Bar No. 252399)
601  West Fifth Street, Suite 1150
Los Angeles, California  90071-2024
Telephone: (213) 612-0001
Fax: (213) 612-0061

By    /s/ Damian J. Martinez
      Damian Martinez
      Attorney    for    Defendant-Counter-
      claimant-Appellant    SCOTT    VAN
      DELLEN

Dated:  April 22, 2013

MEDRANO & CARLTON
John L. Carlton
California State Bar No. 88925
555 West Fifth Street, 31st Floor
Los Angeles, California  90013
Telephone: (213) 996-8355

35

Fax: (213)v996-8356


By    /s/ John L. Carlton
       John L. Carlton

STEINBRECHER & SPAN LLP
Robert S. Span (State Bar No. 68605)
445 S. Figueroa St., Suite 2230
Los Angeles, CA  90071
Telephone:  (213) 891-1400
Facsimile:  (213) 891-1470


By:     /s/ Robert S. Span
       Robert S. Span
       Attorneys for Defendants-counter-
       claimants-Appellants RICHARD
       KOON and KENNETH SHELLEM

## CERTIFICATE OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the HBD Defendants are not aware of any related cases pending in this Court other than those appeals (Nos. 12-56311, 12-56377 and 12-56350) which, like the instant appeal, are already listed as member cases to the lead case (No. 12-56275).

Respectfully submitted,

Dated: April 22, 2013           CORBIN, ATHEY & MARTINEZ, LLP
Damian Martinez (State Bar No. 200159)
Amir Kaltgrad (State Bar No. 252399)
601 West Fifth Street, Suite 1150
Los Angeles, California 90071-2024
Telephone: (213) 612-0001
Fax: (213) 612-0061

By   /s/ Damian J. Martinez
     Damian J. Martinez
     Attorney for Defendant-Counter-claimant-Appellant SCOTT VAN DELLEN

Dated: April 22, 2013           MEDRANO & CARLTON
John L. Carlton

By   /s/ John L. Carlton
     John L. Carlton

37

STEINBRECHER & SPAN LLP
Robert S. Span (State Bar No. 68605)
445 S. Figueroa St., Suite 2230
Los Angeles, CA  90071
Telephone:  (213) 891-1400
Facsimile:  (213) 891-1470


By:  _____/s/ Robert S. Span_____
        Robert S. Span

Attorneys for Defendants-counter-claimants-
Appellants RICHARD KOON and
KENNETH SHELLEM

## CERTIFICATION OF COMPLIANCE

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Appellants' Opening Brief is proportionally spaced and has a typeface of 14 points.  According to the word processing software used to prepare the brief, the brief – including both text and footnotes, and excluding this Certificate of Compliance, the cover page, the Table of Contents, the Table of Authorities, the Statement of Related Cases, and the Certificate of Service – contains 9,489 words.

Dated:  April 22, 2013                 CORBIN, ATHEY & MARTINEZ, LLP
                                       Damian Martinez (State Bar No. 200159)
                                       Amir Kaltgrad (State Bar No. 252399)
                                       601  West Fifth Street, Suite 1150
                                       Los Angeles, California  90071-2024
                                       Telephone: (213) 612-0001
                                       Fax: (213) 612-0061


                                       By___/s/ Damian J. Martinez_____
                                           Damian J. Martinez
                                           Attorney for Defendant-Counter-
                                           claimant-Appellant SCOTT VAN
                                           DELLEN


Dated:  April 22, 2013                 MEDRANO & CARLTON
                                       John L. Carlton


                                       By___/s/ John L. Carlton_____
                                           John L. Carlton

39

STEINBRECHER & SPAN LLP
Robert S. Span (State Bar No. 68605)
445 S. Figueroa St., Suite 2230
Los Angeles, CA  90071
Telephone:  (213) 891-1400
Facsimile:  (213) 891-1470


By:  _____/s/ Robert S. Span_____
        Robert S. Span

        Attorneys for Defendants-counter-
        claimants-Appellants RICHARD
        KOON and KENNETH SHELLEM

| 9th Circuit Case Number(s) | 12-56347, 12-56296 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) April 22, 2013 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

See the attached listing.

Signature (use "s/" format) | /s/ John L. Carlton

| | |
|---|---|
| Kyle P. Barrett<br>Michael R. Delhagen<br>Tressler, LLP<br>Suite 4701<br>One Penn Plaza<br>New York, NY  10119 | |
| Theodore A. Boundas<br>Peter F. Lovato<br>W. Joel Vander Vliet<br>Boundas, Skarzynski, Walsh & Black, LLC<br>Suite 7200<br>200 East Randolph Drive<br>Chicago, IL  60601 | |
| Ross B. Edwards<br>Ommid C. Farashahi<br>Bates, Carey, Nicolaides, LLP<br>Suite 2400<br>191 North Wacker Drive<br>Chicago, IL  60606 | |
| Ira Revich<br>Charleston, Revich & Wollitz, LLP<br>Suite 1250<br>1925 Century Park East<br>Los Angeles, CA  90067-2746 | |
| David Simantob<br>Tressler, LLP<br>Suite 450<br>1901 Avenue of the Stars<br>Los Angeles, CA  90067-6006 | |
| William Rothman<br>11 Jackson Court<br>Coto de Caza, CA  92679 | |